UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL WHITE,

                      Plaintiff,

                                  CIVIL CASE NO. 04-40260

v.

DETROIT EDISON COMPANY, et al.,        HONORABLE PAUL V. GADOLA
                                               U.S. DISTRICT COURT

                      Defendant.
_____/

**ORDER DENYING DETROIT EDISON'S MOTION FOR SUMMARY JUDGMENT, GRANTING LOCAL 223'S AND NATIONAL UNION'S MOTIONS FOR SUMMARY JUDGMENT, AND DENYING NATIONAL UNION'S MOTION TO DISMISS AS MOOT**

On September 9, 2004, after being discharged from his employment, Plaintiff Darryl White filed suit against three entities: (1) his former employer, Detroit Edison Company ("Detroit Edison"); (2) his former local union, Utility Workers Union of America AFL-CIO, Local 223 ("Local 223"); and (3) the union's national organization, Utility Workers Union of America AFL-CIO ("National Union").

Before the Court are four motions filed by Defendants: (1) Defendant National Union's motion to dismiss, filed on March 29, 2005; (2) Defendant Local 223's motion for summary judgment, filed on May 27, 2005; (3) Defendant National Union's motion for summary judgment, filed on May 27, 2005; and (4) Defendant Detroit Edison's motion for summary judgment, filed on July 8, 2005. The Court held a hearing on the motions on November 9, 2005.

For the reasons stated below, the Court will deny National Union's motion to dismiss and Detroit Edison's motion for summary judgment, and grant Local 223's and National Union's

motions for summary judgment.

**I.     Background**

Plaintiff Darryl White began employment with Defendant Detroit Edison in May 2001, as a pipefitter for Detroit Edison's River Rouge power plant. At this time, White became a member of the utility workers union, Defendant Local 223. As a member of the union, White's employment status was protected and governed by a collective bargaining agreement between Detroit Edison and Local 223. Pursuant to the agreement, during the first year of employment, an employee has probationary status. After one year, an employee can be discharged only for just cause.

On March 12, 2002, while still a probationary employee, White was disciplined for being away from his work area without permission on two occasions. White did not file a grievance in response to the discipline. White completed his probationary period with Detroit Edison in May 2002. On both June 1 and June 7, 2002, White left work early by approximately one half hour. On June 14, 2002, a fact-finding hearing was held concerning White's early absences from work in compliance with the collective bargaining agreement which requires a fact-finding hearing before issuance of serious discipline to a union employee. As a result of the hearing, Detroit Edison placed White on "decision-making" leave, which is paid leave where an employee is provided the opportunity to consider the future status of his or her employment with Detroit Edison. Decision-making leave is considered serious discipline and it puts an employee on notice that any subsequent inappropriate behavior may result in more severe discipline, including discharge from employment.

White challenged the discipline by filing a grievance. Pursuant to the collective bargaining agreement, a "third step hearing" was held on the grievance in September 2002. Third step hearings

are in-house hearings conducted by employees of Detroit Edison. White was present at the hearing, had the opportunity to defend himself, and was represented by Local 223. On October 25, 2002, a ruling from the hearing was issued, upholding White's decision-making leave discipline. White alleges that he did not learn of the ruling until April 2003, which was too late to make an appeal.

Between the September 2002 third step hearing and April 2003, White had some difficulty with his supervisors. Two fact-finding hearings were conducted on separate incidents: in one case, a refusal by White to do work because of safety concerns; in another case, an accusation that White engaged in disruptive behavior during a briefing. Neither hearing resulted in White receiving any additional discipline. Also during this time, White had two counseling sessions for arguing with a supervisor and for failing to tell his supervisors where he could be reached. The counseling sessions were not considered discipline, nor did they result in any discipline.

The events that constitute the reason for White's eventual discharge from employment occurred on July 23 and 24, 2003. On July 23, White finished an assignment at approximately 5:00 p.m. White waited for another assignment until 7:00 or 7:30 p.m., and then went on his double shift lunch break. After his lunch, White continued to relax in the break room, waiting for another assignment. White testified that there were several other employees also present relaxing in the break room. White claims that he got up several times to look for his supervisor in order to receive another assignment, but that he was unable to locate him. White waited until 11:30 p.m. without working or receiving another assignment, punched out of work, and went home.

The following day, July 24, White began working on an assignment in the morning. Before White was done with his first job, his supervisor, Wallace Cash, assigned White to another job.

From White's testimony, Cash told White of the second job at 10:30 or 10:45 a.m. White testified that he could not get to the second job immediately, because he was not finished with the first job. White testified that after lunch, at around 12:15 or 12:30 p.m., he went to check the status of his second job, and found that he could not begin because insulation was still being removed at the job site. White left the job site, and a co-worker subsequently began the job without White. White eventually did return to the job site and began work on this second job at around 2:00 p.m.

On July 29, 2003, a fact-finding hearing was held to consider the events of July 23 and 24, 2003. White was present at the hearing and was represented by Local 223. The ruling resulting from the fact-finding was that White was absent from his work location without permission for approximately 3½ hours on July 23 and approximately 2½ hours on July 24. Because this misconduct occurred while White was still on decision-making leave probation, Detroit Edison then made the decision to terminate White's employment. Detroit Edison discharged White in an official letter dated August 22, 2003.

White filed a grievance, and a third step hearing was held on October 27, 2003. White was again present at the hearing and represented by Local 223. On January 27, 2004, a ruling was issued upholding the termination of White's employment. White then asked Local 223 to take his case to arbitration. Local 223 reviewed White's request and decided against taking White's case to arbitration, notifying White of its decision on March 10, 2004.

White appealed Local 223's ruling to National Union. On July 28, 2004, after providing both Local 223 and White an opportunity to submit additional information, National Union decided to uphold Local 223's refusal to take White's case to arbitration.

White filed a complaint against Detroit Edison, Local 223, and National Union, containing three counts. In White's response to Detroit Edison's motion for summary judgment, White withdrew Count III. Thus, only Counts I and II remain before the Court. In Count I, White alleges that Detroit Edison breached the collective bargaining agreement by terminating his employment without just cause. In Count II, White alleges that Local 223 and National Union breached their duties to fairly represent White.

National Union filed a motion to dismiss on account of lack of service. National Union, Local 223, and Detroit Edison all filed motions for summary judgment.

**III.     Defendants' Motions for Summary Judgment**

    **1.     Legal Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden

of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D.

Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### 2. Detroit Edison's Motion for Summary Judgment

Detroit Edison argues its motion for summary judgment should be granted because it had good cause to discharge White from employment. Detroit Edison states that it is undisputed that on July 23 and 24, 2005, White was on decision-making leave for a previous employment infraction, putting him on notice that any additional disciplinary violation may lead to his termination of employment. Detroit Edison argues that White admits he did no work for at least five hours on July 23, 2003 and that he was absent from his worksite for at least three hours on July 24, 2003, and that because of this, Detroit Edison had good cause to terminate White's employment. Additionally, Detroit Edison argues that Local 223 properly filed a grievance to the termination, leading to a third step hearing where Detroit Edison sufficiently considered the evidence and upheld the decision of termination.

Pursuant to the collective bargaining agreement and White's status as a union employee with Detroit Edison, White can only be discharged from employment for good cause. When the facts are considered in the light most favorable to White, the non-moving party, there is a genuine issue of material fact as to whether Detroit Edison had good cause to discharge White.

White argues that his conduct on July 23 and 24, 2003 was entirely proper. White alleges that he was waiting to receive an assignment on the night of July 23, and that he went out several times in search for a supervisor, but that he was unable to find him. By White's account of the facts

of July 23, White did not do anything meriting discharge: he allegedly sought out his supervisor several times and waited in the break room, an area where employees customarily wait in order to receive their next assignment.

In response, Detroit Edison claims that White had a history of not telling his supervisor where he was, that White had been instructed to seek out his supervisor, and that White did not page his supervisor on July 23. Detroit Edison argues that these facts are undisputed and that they indicate that White's behavior was inappropriate. The Court, however, finds that these considerations simply weigh against White's testimony and the question of whether his actions on July 23 were reasonable or not.

On July 24, White alleges that he was reasonably working the entire time. White gives several reasons to explain the delay in beginning his second job: that he was busy finishing up his first job and cleaning his job site; that he had lunch; and that he could not begin the second job when he arrived at the job site because insulation was still being cleaned up. White further alleges that his supervisor, Wallace Cash, was vindictive and intended to get White terminated. White claims that Cash gave White contradictory work directions, resented White's safety concerns, and singled out White for criticism and retaliation.

Considering all these facts in the light most favorable to White, the Court finds that the question of whether White's actions on July 23 and 24, 2003 constitute just cause for White's discharge is a question appropriate for a jury to decide. Since Detroit Edison is not entitled to dismissal of White's case as a matter of law, the Court will deny its motion for summary judgment.

### 3.   Local 223's Motion for Summary Judgment

Local 223 argues their motion for summary judgment should be granted because there is no

evidence in the record to show that Local 223 breached its duty of fair representation to White. The United States Supreme Court case, *Vaca v. Sipes*, states that a "breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." This occurs when the union's behavior is "so far outside of a 'wide range of reasonableness' that it is wholly irrational or arbitrary." *Air Line Pilots Assoc. v. O'Neill*, 499 U.S. 65, 78 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Local 223 argues that it vigorously represented White in the fact-finding hearing and in the third step hearing. After Detroit Edison's decision to discharge White, Local 223 argues that it examined the entire record and reasonably determined that the case was not appropriate to take to arbitration. For these reasons, Local 223 states that its summary judgment motion should be granted.

In support of his claim that Local 223 breached its duty of fair representation, White does not argue that Local 223's representation of White at the fact-finding hearing or at the third step hearing was deficient. Instead, White argues first, that Local 223 failed to notify him of the meeting when Local 223 decided against taking White's case to arbitration, and second, that it was bad faith for Local 223 to not pursue arbitration.

Local 223 did not breach their duty when it failed to notify White of the board meeting. White was present at both the prior fact-finding hearing and third step hearing. Local 223 had the transcripts of both hearings for its review in coming to the determination against arbitration, both of which included White's version of the facts in the case. There is no indication that White was prejudiced by not being present at the Local 223 meeting, as White has not alleged that there was additional information that he would have brought to the attention of Local 223 that would have

9

affected its ultimate decision. If he had been present, White would have apparently only reiterated his version of the facts, of which Local 223 already had two accounts from the two previous hearings. Therefore, since there is no indication that White was adversely affected by not being present at the meeting, Local 223 did not breach their duty of fair representation by not notifying White of their meeting.

     White further argues that it was bad faith on the part of Local 223 to deny arbitration because Detroit Edison discharged White without just cause, and that Local 223 has provided no valid reason not to pursue arbitration. In support, White brings up the testimony of Ed Czupich, an officer of Local 223, who testified that he believed that White had been discharged without just cause.

     The evidentiary record indicates that Local 223 did not act arbitrarily in refusing to take White's case on appeal. Though the actual minutes of the meeting were not submitted into evidence, the record indicates that Local 223 looked at the evidence in White's case including the transcripts of the fact-finding and third step hearings. Ed Czupich is only one member of the Local 223 board. The board as a whole voted against taking White's case to arbitration. As a board, Local 223 has the discretion to not take on those claims to arbitration that it does not think are sufficient. Since there is no evidence from which a jury could find that Local 223 acted in bad faith or breached its duty of fair representation, the Court will grant Local 223's motion for summary judgment.

     **4.    National Union's Motion for Summary Judgment**

     Similar to Local 223, National Union argues that its motion for summary judgment should be granted because there is no evidence that its conduct in affirming Local 223's decision to not take White's case to arbitration was arbitrary, discriminatory, or in bad faith. National Union observes that it had all the relevant documentation in White's case, and that it fully considered the

merits of White's appeal.

White is unable to point to any action on the part of National Union that is arbitrary. White simply argues that he has a meritorious case of unlawful discharge and that National Union "rubber stamped" Local 223's decision to deny the appeal. This is insufficient for establishing arbitrariness on the part of National Union. Not only is National Union permitted to give some deference to the decisions of Local 223, but the evidentiary record indicates that National Union did not merely "rubber-stamp" Local 223's decision. Instead, National Union solicited from both Local 223 and White any additional information that would be helpful in considering White's appeal. Finally, there is nothing in the record to indicate that National Union did not consider all the evidence in White's case. The Court thus finds that National Union's action were not arbitrary. Since National Union did not breach its duty of fair representation, the Court will grant National Union's summary judgment motion.

### IV.     National Union's Motion to Dismiss

In addition to its motion for summary judgment, National Union moves to dismiss the case against it, claiming White improperly served the summons and complaint on National Union.

Because the Court is granting National Union's motion for summary judgment and thus dismissing National Union as a party in this action, National Union's motion to dismiss is moot.

### V.     Conclusion

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant Detroit Edison's motion for summary judgment [docket entry 42] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Local 223's and National Union's motions for summary judgment [docket entries 35 and 36] are **GRANTED**, Count II (breach of fair

11

representation) is **DISMISSED**, and Defendants Local 223 and National Union are hereby **DISMISSED** from this action.

    **IT IS FURTHER ORDERED** that Defendant National Union's motion to dismiss [docket entry 23] is **DENIED** as moot.

    **SO ORDERED.**


Dated: November 15, 2005                          s/Paul V. Gadola
                                                      HONORABLE PAUL V. GADOLA
                                                      UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on November 16, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
Mark S. Demorest; Christopher L. Haven; Ellen F. Moss; Charles . Oxender; David R. Radtke; Richard J. Seryak; Christoher M. Trebilcock, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: .

                                                     s/Ruth A. Brissaud
                                                     Ruth A. Brissaud, Case Manager
                                                     (810) 341-7845